**MEMORANDUM IN SUPPORT**

**I.     INTRODUCTION**

Plaintiffs' FDCPA claims arise out of an underlying foreclosure proceeding with respect to a rental property.  Plaintiffs, Joe and David Leytze, are real estate investors who conduct business through Tri-Star Investments, LTD, Inc. ("Tri-Star Investments").  Through Tri-Star Investments, Plaintiffs purchased eight rental properties that were financed by The Huntington National Bank ("Huntington Bank").  (Doc. No., 3-3, PageID 100-101; Doc. No. 3-6; PageID 142-160).  One of the Tri-Star Investment mortgage loans went into default, allegedly through accounting errors on the part of Huntington Bank.  The mortgage loan at issue was referred to Defendant Reimer, Arnovitz, Chernek & Jeffrey Co., L.P.A. ("the Reimer Firm") for foreclosure.  On November 10, 2014 the Reimer Firm sent Plaintiffs a 30-day validation letter.  The underlying foreclosure action was filed on November 24, 2014, and also contained a Notice under the Fair Debt Collection Practices Act ("FDCPA").  Plaintiffs now assert claims pursuant to the FDCPA and the Ohio's Consumer Sales Practice Act ("OCSPA") against the Reimer Firm. Huntington Bank is not a party to this case. Joe and David Leytze have filed a separate case against Huntington Bank in the United States District Court, Southern District of Ohio, Case No. 1:15-cv-00227.[1]

Plaintiffs' claims fail as a matter of law because the underlying mortgage loan was incurred for a rental property and therefore the debt was not incurred primarily for personal, family, or household purposes.  In other words, Plaintiffs' mortgage does not constitute a "debt" under the FDCPA or OCSPA, subject to the protections of those Acts.  As a result, Plaintiffs have failed to state viable individual claims pursuant to either the FDCPA or OCSPA.  The

---

[1] A copy of the Complaint in *David Leytze, et al. v. Huntington Bancshares Inc*., Case No. 1:15-cv-00227 ("Huntington Bank Case") is attached hereto as Exhibit A.

purported class action claims also fail because the FDCPA Notice attached to the Foreclosure Complaint did not "overshadow" the 30-day validation letter.

## II. FACTS

In late 2006, Tri-Star Investments purchased the property located at 3245 Cliffside Drive, Cincinnati, Ohio. Tri-Star Investments executed an open-end mortgage which was filed with the Hamilton County Recorder's Office on November 9, 2006. (Doc. No. 3-5, PageID 122-123). The mortgage was signed by Joe and David Leytze as members of Tri-Star Investments. A loan in the amount of $84,000 was used to purchase the Cliffside Drive property. Joe and David Leytze signed the promissory note both individually and as members of Tri-Star Investments. (Doc. No. 3-5, PageID 114-118). Plaintiffs admit in the complaint in the Huntington Bank Case, that they are engaged in the residential real estate business through Tri-Star Investments LTD, Inc. (Ex. A, ¶1). Moreover, the property that was the subject of the foreclosure was a rental property owned by Plaintiffs through Tri-Star Investments. The debt to Huntington Bank, which the Reimer Firm sought to collect on behalf of its client, was therefore not a debt incurred for primarily household, personal or family use.

In March 2014, Plaintiffs discovered that Huntington Bank miscalculated Plaintiffs' mortgage payments. (Doc. No. 3, PageID 80). Huntington acknowledged their mistake but still failed to correct the issue. (Doc. No. 3, PageID 80-81). On November 5, 2014, Huntington Bank sent a letter advising Plaintiffs that the loan on the Cliffside Drive property had been referred to the Reimer Firm for foreclosure. (Doc. No. 3, PageID 81; Doc. No. 3-2, PageID 98).

Huntington Bank retained the Reimer Firm to initiate foreclosure proceedings with respect to the Cliffside Drive mortgage loan. (Doc. No. 3, PageID 79). On November 10, 2014, the Reimer Firm sent a 30-day validation letter informing Plaintiffs that it had been retained by

Huntington Bank to institute foreclosure proceedings with respect to the Cliffside Drive loan. (Doc. No. 3-4, PageID 103-104).  In addition to identifying options available to help resolve the matter, the validation letter provided Plaintiffs with a "Notice Under Fair Debt Collection Practices Act" stating that they had thirty days to dispute the validity of the debt, or that the Reimer Firm would assume it was a valid debt.  (Id.)  The 30-day validation letter further informed the Plaintiffs that the law does not require them to wait the thirty days before commencing a foreclosure action, unless the Plaintiffs disputed the debt.  (Id.)  Although Plaintiffs claim they did not believe the debt was valid, they did not respond to the 30-day validation letter sent by the Reimer Firm and do not allege that they disputed the validity of the debt.

On November 26, 2014, the Reimer Firm filed the underlying foreclosure action in the Hamilton County Court of Common Pleas, Case No. A1406959.  ("Underlying Foreclosure Action") (Doc. No. 3-5, PageID 108).  Tri-Star Investments, Joe Leytze and David Leytze were all named as defendants in the Foreclosure Complaint.  (Id.)  The Foreclosure Complaint specifically provided a "Notice Under the Fair Debt Collections Practices Act," referred to by Plaintiffs as the "Second Notice," which, among other information, provided the Plaintiffs with an additional thirty days to dispute the validity of the debt and explained that they still had the obligation to respond to the foreclosure complaint within twenty-eight days.  (Id.)  Again, Plaintiffs did not respond to the "Second Notice" and do not allege that they sent any communication to the Reimer Firm disputing the debt.

On February 2, 2015 Plaintiffs filed an Answer and Counterclaim against Huntington Bank in the Underlying Foreclosure Action.  (Doc. No. 3-6, PageID 142-155).  Plaintiffs, and their real estate investment company Tri-Star Investments, asserted claims against Huntington

3

Bank for breach of contract, negligence-accounting methodologies, negligence-hiring and supervising of debt collector, unjust enrichment, and conversion. The Foreclosure Complaint was dismissed on February 27, 2015. Plaintiffs now assert claims against the Reimer Firm under the FDCPA and OCSPA. Huntington Bank has not been named as a party in this case. However, Plaintiffs recently filed a separate federal action against Huntington Bank asserting claims similar to those asserted in the Underlying Foreclosure Action. (See Ex. A).

### III.   LAW & ANALYSIS

#### A.   *Motion to Dismiss Standard*

In deciding a motion to dismiss under Rule 12(b)(6), the Court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

#### B.   *Plaintiffs' Individual FDCPA Claims Must Be Dismissed As a Matter of Law Because the Mortgage Loan At Issue Is Not a Consumer Debt and the FDCPA Does Not Apply*

The Amended Complaint sets forth four separate claims under the FDCPA: Count I asserts claims pursuant to §1692e(2)(A) and §1692f for allegedly "misrepresenting the character,

4

amount, or legal status of the purported debt;" Count II, asserts a claim under §1692e(5) for threatening to take and taking "unlawful" legal action; Count III asserts a claim under §1692g(a) for failing to provide Plaintiffs with the amount of debt in the November 10, 2014 validation letter; and, Count IV asserts a claim under §1692g(b) for "overshadowing." Plaintiffs' individual claims fail as a matter of law because the debt at issue was incurred with respect to a rental property and therefore does not fall within the jurisdiction of the FDCPA. Plaintiffs' purported class action claim based on alleged "overshadowing" also fails as a matter of law.

      **1.    Plaintiffs Failed to Plead That The Loan At Issue Is A Consumer "Debt" Under the FDCPA**

The FDCPA is a federal statute enacted to protect debtors from abusive debt collection practices. To qualify for FDCPA protection, a "debt" must be incurred "primarily for personal, family, or household purposes." 15 U.S.C. §1692(a)(5). To sustain a claim under the FDCPA, a plaintiff must establish: "(1) that he is a 'consumer' as defined in 15 U.S.C. §1692a(3); (2) that the "debt" arises out of a transaction which is "primarily for personal, family or household purposes; (3) defendant is a "debt collector" as defined in the FDCPA; and (4) defendant has violated one of the prohibitions in the FDCPA." *Estep v. Manley Deas Kochalski, LLC*, 942 F. Supp. 2d 758, 766 (S.D. Ohio 2013). In *Estep*, this Court dismissed plaintiff's FDCPA claims, concluding that they "failed to allege facts showing that the purpose of their debt was primarily for personal, family or household purposes, a necessary element of their FDCPA claim. *Id.* at 767. See also *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F.Supp.2d 914, 928 (N.D. Ohio 2009); *Kafele v. Shapiro & Felty, L.L.P.*, No. 2:03-cv-886, 2006 U.S. Dist. LEXIS 13155 (S.D. Ohio Mar. 27, 2006).

In the present case, the Amended Complaint fails to assert any allegation with respect to the loan or "debt" at issue. There is no allegation that the "debt" arises out of a transaction

5

which is primarily for personal, family, or household purposes. As a matter of law, Plaintiffs have failed to plead a required element of the FDCPA and accordingly Counts I, II, III and IV of the Complaint must be dismissed as a matter of law.

### 2. The Mortgage Debt at Issue Was Incurred for a Rental Property and is Not Covered Under the FDCPA

Plaintiffs' failure to properly plead that the "debt" at issue was incurred primarily for personal, family, or household purposes was no mistake. In fact, the Amended Complaint and attached Exhibits clearly establish that the mortgage loan at issue was a commercial debt incurred to purchase a rental property as part of Plaintiffs' real estate investment business. As such, the FDCPA simply does not apply and Plaintiffs have failed to state a claim upon which relief can be granted in Counts I-IV of the Amended Complaint.

It is well established that loans incurred with respect to commercial real estate or rental properties do not constitute FDCPA "debt." In *Floyd. v. Bank of America,* No. 1:13-cv-2071, 2004 U.S. Dist. LEXIS 101932 (N.D. Ohio July 25, 2014) the district court dismissed plaintiff's FDCPA claims arising out of debt incurred to purchase a rental property. The *Floyd* court specifically held:

> A mortgage is a debt, and "mortgage foreclosure is debt collection under the [FDCPA,]" *Glazer v. Chase Home Fin. LLC*, 704 F3d 453, 464 (6th Cir. 2013), provided that the mortgage was incurred for personal, family, or household purposes. *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 928 (N.D. Ohio 2009) (citing 15 U.S.C. § 1692(a)(5)). If, however, plaintiff incurred the debt to purchase commercial real estate, *First Gibraltar Bank, FSB v. Smith*, 62 F.3d 133, 136 (5th Cir. 1995), or rental properties, *see, e.g. Hunter v. Wash. Mut. Bank*, No. 2:08-CV-069, 2012 U.S. Dist. LEXIS 26871, 2012 WL 715270, at *5 (E.D. Tenn. Mar. 1, 2012), *Kafele v. Shapiro & Felty, L.L.P.*, No. 2:03-CV-886, 2006 U.S. Dist. LEXIS 13155, 2006 WL 783457, at *5 (S.D. Ohio Mar. 27, 2006), plaintiff's mortgage does not constitute FDCPA "debt."
>
> To determine whether the mortgage debt qualifies as FDCPA debt, a court should consider the purpose of the debt at the time of its creation, *Hunter*, 2012 U.S. Dist. LEXIS 26871, 2012 WL 715270, at *2 (citing *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, 214 F.3d 872, 874-75 (7th Cir. 2000)).

> If plaintiff incurred a mortgage "primarily to generate income as rental property," the mortgage is not—and cannot be transformed into FDCPA debt. See *Estep v. Manley Deas Kochalski, LLC*, 942 F. Supp. 2d 758, 767 (S.D. Ohio 2013). Even if plaintiff resides on the rental property sometime after acquisition, plaintiff's personal use of the property does not alter the commercial character of the transaction creating the debt obligation.
>
> ***
>
> The Floyds simply did not allege in their complaint that they incurred their mortgage loan primarily for personal, family, or household purposes. The Chapter 7 bankruptcy petition in 2010, contrary to defendants' position, on its face shows only that the Floyds used the property as a rental property at the time of the petition. Neither the petition nor the complaint shed any light on the purpose for which the Floyds initially incurred mortgage debt on the property in 2006. By omitting the purpose for which they obtained the mortgage on the property, the Floyds have not adequately alleged that they incurred an FDCPA "debt."

*Id.* at *15.

The record in this case establishes that the "debt" in question was incurred to purchase a rental property. Plaintiffs filed a counterclaim in the Underlying Foreclosure Action which is attached to the Amended Complaint as Exhibit E[2] (Id.) which states:

> Counterclaim-Defendants Joe D. Leytze, David A. Leytze, and Tri-Star Investments LTD, Inc. (collectively, the Leytzes") are engaged in the residential real estate business, and regularly conduct business in the Cincinnati, Ohio area. Counterclaim-Plaintiffs Joe D. Leytze, David A. Leytze are Ohio residents, and own and operate their real estate investment company, Tri-Star Investments, LTD, Inc.

The mortgage with respect to the Cliffside Drive property is in the name of Tri-Star Investments. (Doc. No. 3-5, PageID 122-123). The promissory note in the amount of $84,000 was signed by Plaintiffs both individually, and as members of Tri-Star Investments. (Id.) The note also included a "family rider" requiring the borrower to "maintain insurance against rent loss" and assigning leases and rents to the lender. (Doc. No. 3-5, PageID 127-128).

---

[2] Plaintiffs incorporate by reference all of the allegations set forth in the Answer and Counterclaim filed in the foreclosure case attached as Exhibit E to the Amended Complaint. (Doc. No. 3, PageID 82-83).

7

These documents along with the complaint Plaintiffs filed in the action against Huntington Bank (Ex. A) establish that the "debt" at issue was incurred to purchase a rental property as part of Plaintiffs' real estate business.  Plaintiffs do not allege, nor can they, that the mortgage loan obtained to acquire the Cliffside property was for personal, family, or household purposes.  Nowhere in the Complaint do Plaintiffs allege that the mortgage loan was a consumer debt or incurred primarily for personal, family, or household purposes.  This is fatal to Plaintiffs' FDCPA claims.  Because the Cliffside Drive debt was incurred to purchase a rental property, the FDCPA does not apply and Plaintiffs' individual claims as set forth Counts I-IV must be dismissed as a matter of law.

   **C.** ***Plaintiffs' §1692g(b) Claim Must Be Dismissed Because The Second Notice Attached to the Foreclosure Complaint Did Not Overshadow the 30-Day Validation Letter as the Debtors' Rights and Responsibilities Were Clearly Explained***

In addition to the fact that Plaintiffs' FDCPA claims must be dismissed because the mortgage loan is not a consumer debt, it fails because the collection activities did not overshadow Plaintiffs' right to dispute the debt.  In Count IV of the Amended Complaint, Plaintiffs allege that the Reimer Firm violated §1692g(b) by "engaging in collection activities during the 30-day validation period that overshadow or are inconsistent with…[Plaintiffs] right to, among other things, dispute the debt."  (Doc. No. 3, PageID 91).  As a threshold matter, any suggestion by Plaintiffs that the filing of the Foreclosure Complaint by Defendants less than 30 days after sending the initial validation letter violated the FDCPA is without merit.  This Court has specifically held that it is not a violation of the FDCPA to file a lawsuit within the 30-day validation period.  *Sprouse v. City Credits Co.*, 126 F. Supp. 2d 1083, 1088 (S.D. Ohio 2000).  Plaintiffs do not allege that they responded to the November 10, 2014 validation letter disputing

8

the debt at issue, and the Reimer Firm was under no obligation to suspend collection efforts in order to validate the debt.

Plaintiffs allege in paragraph 58 of the Amended Complaint that "Defendant violated 15 U.S.C. §1692g(b) by providing Plaintiffs and putative Class Members with the Second Notice during the 30-day validation period, which overshadowed and conflicted with the initial validation letters sent by Defendant." (Doc. No. 3, PageID 91).

15 U.S.C. §1692g(b) states as follows:

> (b) Disputed debts. If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this title may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. <u>Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.</u> (emphasis added).

Plaintiffs' claim that the language in the November 10, 2014 validation letter was "overshadowed" by the "Second Notice" set forth in the Foreclosure Complaint fails as a matter of the law. The Second Notice is very clear that the debtors had the right to dispute the debt within 30 days, but were also required to respond to the Foreclosure Complaint within 28 days as required under Ohio law.

The Sixth Circuit Court of Appeals, in rejecting a similar claim, addressed the overshadowing issue in *Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504 (6th Cir. Ohio 2007). In that case, the law firm filed a foreclosure complaint against the debtor which included

9

30-day validation language in the body of the complaint.  *Id*. at 506.  The debtor argued that the law firm violated §1692g by including the 30-day validation language in the complaint "without providing reconciling language explaining the conflicting time periods between the consumer's deadline to file an answer to the complaint and the consumer's deadline to request validation of the debt."  *Id*. at 510.  The debtors further argued that the notice "gives the least sophisticated consumer the false impression that she has thirty days before she is required to take action in the lawsuit."  *Id*.  The Sixth Circuit rejected the debtor's argument and held that the "notice was clear in stating that the two time periods were on separate tracks, i.e., the court's requirements and federal rights under the FDCPA."  *Id*. at 511.  The court further noted that, "[w]e find that the least sophisticated consumer, after carefully reading the summons, notice, and complaint in their entirety, would not be led to believe that she did not have thirty days in which to dispute the validity of the debt."  *Id*.  In other words, the court found that the least sophisticated consumer would understand that there were thirty days in which to dispute the debt pursuant to the FDCPA, but also that an answer to the foreclosure complaint was required at a different time.

Here, the language contained in the 30-day validation letter and in the Second Notice contained in the Foreclosure Complaint provided an even better and clearer explanation than the one provided in *Fed. Home Loan.*  The 30-day validation letter specifically provided:

<u>NOTICE UNDER FAIR DEBT COLLECTION PRACTICES ACT</u>

This law firm is a debt collector attempting to collect this debt for our client and any information obtained will be used for that purpose.  Unless you dispute the validity of this debt, or any portion thereof, within thirty (30) days of receipt of this letter, this law firm will assume that the debt is valid.  If you notify this law firm in writing within the thirty (30) day period that the debt, or any portion thereof, is disputed, this law firm will provide you with the name and address of the original creditor if different from the current creditor.  If you dispute this debt, please forward your request for verification to our law firm at the address of P.O. Box 39696, 30455 Solon Road, Solon, OH  44139.

The Second Notice, which was attached to the foreclosure complaint, states in its entirety:

**NOTICE UNDER THE FAIR DEBT COLLECTION PRACTICES ACT**

If your name appears as a Defendant in this Complaint, the following notice applies to you.

The purpose of the attached documents is to collect a debt.  Any information you provide to Reimer, Arnovitz, Chernek & Jeffrey Co., L.P.A., will be used for that purpose.

The amount of the debt is stated in paragraph one of this Complaint.

The plaintiff as named in this Complaint is the creditor to whom the debt is owed.

The debt described in the Complaint and evidenced by the copy of the note attached hereto will be assumed to be valid by Reimer, Arnovitz, Chernek & Jeffrey Co., L.P.A., unless, within thirty days after the receipt of this notice, you dispute the validity of the debt or some portion thereof.

If you notify Reimer, Arnovitz, Chernek & Jeffrey Co., L.P.A. in writing within thirty days of the receipt of this notice that the debt or any portion thereof is disputed, Reimer Arnovitz, Chernek & Jeffrey Co., L.P.A., will obtain a verification of the debt and a copy of the verification will be mailed to you by Reimer, Arnovitz, Chernek & Jeffrey Co., L.P.A.

Please note that notwithstanding the foregoing, you are still responsible under state law to file a response to the Complaint, to which this Notice is attached, within twenty-eight (28) days.  This twenty-eight (28) day period and the thirty (30) day period mentioned above both commence the day after you receive this Complaint.  If you are uncertain of your rights or obligations under this notice of the Complaint, or if you have any questions concerning the proceedings that have been commenced by the filing of this complaint, you should consult an Attorney of your choice.

> If the creditor named as plaintiff in this Complaint is not the original creditor, and if you make a request in writing to Reimer, Arnovitz, Chernek & Jeffrey Co., L.P.A., within thirty days from the receipt of the notice, the name and address of the original creditor will be mailed to you by Reimer, Arnovitz Chernek & Jeffrey Co., L.P.A.
>
> Any written requests should be addressed to Reimer, Arnovitz, Chernek & Jeffrey Co., L.P.A., P.O. Box 39696, Solon, Ohio 44139.
>
> This is an attempt to collect a debt and any information obtained will be used for that purpose.

The language contained in the Second Notice provides a clear explanation to the debtor regarding the relationship between the time to respond to the lawsuit and the time to dispute the debt.

Plaintiffs claim that Defendants "systematically violated the FDCPA" by providing "putative Class Members with the Second Notice within the initial 30-day validation period" is also without merit. (Doc. No. 3, PageID 84). Nothing in the November 10, 2014 30-day validation letter or the Second Notice set forth in the Foreclosure Complaint filed on November 24, 2014 would lead a "least sophisticated consumer" to believe that he had less than 30 days to dispute the validity of the debt. In determining whether the 30-day validation period was effectively conveyed to the least sophisticated consumer, the Sixth Circuit has ruled that the "critical question is whether [the debtor] has been led to believe 'that [she] did not have thirty days in which to dispute the validity of the debt.'" *Fed. Home Loan Mortg. Corp.,* 503 F.3d at 510 (quoting *Smith v. Computer Credit, Inc.*, 167 F.3d 1052, 1054 (6th Cir. 1999)).

There is no language in the Second Notice that would lead any consumer to believe that they did not have 30 days from the receipt of the Foreclosure Complaint to dispute the validity of the debt. See, *Smith*, 167 F.3d at 1055. In fact, the Second Notice acted to extend the 30-day validation period and actually provided Plaintiffs with additional time to dispute the validity of the debt. Plaintiffs, however, chose not to respond to either the initial validation letter or the

Second Notice, and cannot now complain that the Reimer Firm somehow misled them in violation of the FDCPA.

> **D.     The OCSPA Claim Must Be Dismissed Because There Was No "Consumer Transaction"**

Here, Plaintiffs cannot establish that they are consumers who entered into a "consumer transaction." The acts Plaintiffs complain of do not arise out of a "consumer transaction," a pre-requisite to establishing an OCSPA claim. Like the FDCPA, the OCSPA also requires the transaction at issue to be for primarily personal, family, or household purposes. R.C. 1345.01(A) states: "'consumer transaction' means a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household[.]" R.C. 1345.01(A). As set forth in section B, Plaintiffs did not enter into a consumer transaction, as the loan was to purchase rental property.

Furthermore, transactions between financial institutions, including national banks, and their customers do not fall under the OCSPA. Ohio and federal courts have held that a law firm is not subject to liability under the OCSPA for actions when it represents a party that did not engage in a consumer transaction. *Floyd v. Bank of Am., N.A.*, 2014 U.S. Dist. LEXIS 101932 at *19.[3] Not only is a transaction between a bank and a customer outside the OCSPA, but "when a law firm directly represents an exempt financial institution in debt collection, the OCSPA does not apply." *Id*. (citing *Lee v. Javitch, Block & Rathbone, LLP*, 522 F. Supp. 2d 945, 956 (S.D. Ohio 2007) ("OCSPA claim 'would not lie against' a law firm 'directly represent[ing]' a financial institution 'in attempting to collect [a] debt.'").

---

[3] Section 5725.01 of the Ohio Revised Code defines a "financial institution." A financial institution specifically includes a "national bank organized and existing as a national bank association pursuant to the 'National Bank Act,' 12 U.S.C. 21." Ohio Rev. Code Ann. § 5725.01(A)(1). Huntington Bank is a nationally chartered bank. See attached Ex. B.

In *Floyd*, the debtors sued the defendant law firm under the FDCPA and the OCSPA alleging that their note was fraudulently transferred.  The law firm represented Bank of America, N.A. in a foreclosure case against the plaintiffs.  The court dismissed the OCSPA claim finding that the law firm and bank were exempt from OCSPA liability since the bank was "an exempt financial institution" and the law firm "directly represent[ed] the exempt financial institution." *Id*. at *21.  Similarly, here, the Reimer Firm directly represented Huntington Bank, an exempt financial institution, and thus the OCSPA does not apply to Plaintiffs' claim and it must be dismissed. (Doc. No. 3, PageID 81).

## IV.   CONCLUSION

Plaintiffs have failed to state a claim under the FDCPA or OCSPA because they failed to plead that the mortgage loan in question was incurred primarily for personal, family, or household purposes.  In fact, the loan was incurred to purchase a rental property they owned through their real estate development company, Tri-Star Investments.  Furthermore, the Second Notice attached to the Foreclosure Complaint did not overshadow the 30-day validation letter since it did not shorten the time period the debtors had to dispute the debt, but instead provided an additional 30-day period. For the reasons set forth above, Plaintiffs' claims should be dismissed with prejudice.

Respectfully submitted,

*/s/Catherine F. Peters*

**TIMOTHY T.  BRICK (0040526)**
**CATHERINE F. PETERS (0078044)**
**Gallagher Sharp**
Sixth Floor – Bulkley Building
1501 Euclid Avenue
Cleveland, OH  44115
(216) 241-5310 (Telephone)
(216) 522-1157 (Direct Dial)
(216) 241-1608 (Facsimile)
Email:  tbrick@gallaghersharp.com
cpeters@gallaghersharp.com
**Attorneys for Defendant Reimer, Arnovitz, Chernek & Jeffrey Co., L.P.A.**